## Case No. 10,616.

### The OTTAWA.

[Brown, Adm. 356; 4 Chi. Leg. News, 153; 5 Am. Law T. Rep. U. S. Cts. 147; 6 Am. Law Rev. 575.] [1]

District Court, E. D. Michigan. Feb., 1872.

#### JURISDICTION—INJURY TO WHARF.

An action will not lie in admiralty against a vessel to recover damage done by her to a wharf projecting into navigable water. Wharves are but improvements or extensions of the shore, and injuries done to them, no matter by what agency, are injuries done on land, and do not constitute maritime torts for which an action in the admiralty can be maintained.

[Cited in The Maud Webster, Case No. 9,302; The Champion, Id. 2,584; The Mary Stewart, 10 Fed. 138; The C. Accame, 20 Fed. 643; Leonard v. Decker, 22 Fed. 742; The Professor Morse, 23 Fed. 804; Milwaukee v. The Curtis, 37 Fed. 706; The H. S. Pick-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission. 6 Am. Law Rev. 575, contains only a partial report.]

ands, 42 Fed. 240; Homer Ramsdell T. Co. v. Compagnie Generale Transatlantique, 63 Fed. 848; The Mary Garrett, Id. 1011, 1012.]

This was a libel in rem, by Wm. P. Stafford and Clark Haywood, lessees of a wood dock or wharf, extending from the shore some distance over the water, at Port Hope, on Lake Huron, for a collision with, and damage to, their wharf by the propeller Ottawa, on the 6th day of November, 1859. The propeller stopped at libellants' wharf for a supply of wood. After she had obtained a supply, the agent of libellants in charge of the wharf, fearing damage from a storm which was then threatening, requested the master of the propeller to leave the wharf with his vessel. To this the master consented, but his engineer, fearing the storm, refused to work the engines, and the vessel remained moored to the wharf, the master saying to the agent he would pay for any damage she might do. The storm came on, and the propeller, by pounding against the wharf, and otherwise, damaged the same to the amount of $154.45.

H. B. Brown, for libellants.
W. A. Moore, for claimants.

LONGYEAR, District Judge. The only question in this case is whether a lien exists and a libel in rem can be maintained against the propeller for the injury and damage complained of. The criterion of admiralty jurisdiction in cases of tort is locality. That is, the injury must be done on maritime waters, or, as applied to the lakes and to rivers, navigable waters. Lake Huron comes within this category. Therefore, if the injury done to the wharf may be considered as done upon the waters, the libel will lie. If, on the contrary, a wharf is to be considered as land, as real estate, or on the land, or in fact the shore, then the libel will not lie. It is of no consequence that the damage was done by a maritime thing, the vessel, if it was not also done upon the water. The Plymouth, 3 Wall. [70 U. S.] 20; Ransom v. Mayo [Case No. 11,-571]; [Philadelphia, W. & B. R. Co. v. Philadelphia & H. G. Towboat Co.] 23 How. [64 U. S.] 215.

The English cases cited by libellants' advocate (The Uhla, reported in a note to The Sylph, L. R. 2 Adm. & E. 28; The Excelsior, Id. 268; The Sylph, Id. 24) may all be dismissed with the single remark, that they are referable to an act of parliament known as the admiralty court act of 1861, by which jurisdiction in the admiralty is expressly conferred in case of "any claim for damage done by any ship," etc., and in regard to which Dr. Lushington, in the case of The Uhla, remarked: "I take it to mean any case of damage done by a ship; there is no limitation, no restriction expressed." These cases, therefore, throw no light upon what is maritime law upon the subject. Mr. Parsons, in his work on Shipping and Admiralty, at page 599, says, "It not unfrequently happens that vessels are injured, or cause injury, by striking upon wharves, or coming into contact with incumbrances in the docks beside or between the wharves. Such cases give rise to questions concerning the rights, duties, and liabilities of the vessels, or their owners, on the one hand, and of the owners of the wharves, on the other." He then cites several cases in which actions have been entertained in the courts of common law in the United States, but none in the admiralty, for injuries of this character. No case of this character in the admiralty courts of the United States was cited upon the argument, and it is believed that, aside from the English cases referred to, none can be found in the books. It is clearly a case of first impression, so far as any reported adjudicated cases in this country are concerned. May we not apply the language of Justice Nelson in the case of The Plymouth, 3 Wall. [70 U. S.] 35–37, in regard to a similar dearth of reported cases in that case, and assume with him that the reason of it is, that the case "is outside the acknowledged limit of admiralty cognizance over marine torts, among which it has been sought to be classed," and that "the remedy for injury belongs to the courts of common law?"

There are, however, several reported adjudications of the courts in this country from which we may derive aid in determining this question. In the case of The Plymouth, 3 Wall. [70 U. S.] 20, the packing-houses, for the loss of which by fire negligently communicated by a vessel lying at the wharf, a libel in rem had been filed, stood wholly upon the wharf, and the supreme court held that the damage done by their destruction was a damage done wholly on land (pages 33, 36), that the remedy belonged to the courts of common law, and dismissed the libel. In that opinion the wharf is spoken of in the same connection with the buildings, and evidently as of the same character. In the Rock Island Bridge Case, 6 Wall. [73 U. S.] 213, 216, Justice Field, in delivering the opinion of the court, makes use of the following language: "A maritime lien can only exist upon things which are the subjects of commerce on the high seas or navigable waters. It may arise with reference to vessels, steamers, and rafts, and upon goods and merchandise carried by them. But it cannot arise upon anything which is fixed and immovable, like a wharf, a bridge, or real estate of any kind. Though bridges and wharves may aid commerce by facilitating intercourse on land, or the discharge of cargoes, they are not in any sense the subjects of maritime lien." And why not? Clearly, because they are fixed and immovable—in fact, real estate—and are not the subjects of commerce on the high seas or navigable waters. They

are, in fact, here spoken of as contradistinguished from such subjects. Not that they may not, in some sense, be subjects of commerce, but that they are not such on the waters, in the sense in which admiralty jurisdiction attaches. Being fixed and immovable—in fact, real estate—and not being subjects of commerce on the water, how can an injury to a wharf be said to be an injury done on the water? The place or locality of the injury is the place or locality of the thing injured, and not of the agent by which the injury is done. The Plymouth, supra.

In the case of Russel v. The Empire State [Case No. 12,145], my predecessor, in an able opinion, held, and no doubt correctly, that a wharf built at the terminus of a street is but an extension of the street, and subject to the same easements, rights and liabilities of a street or public highway, and nothing more. So, by parity of reasoning, a wharf, constructed by an individual proprietor, is but an extension of the shore, and as such subject to the same rights and liabilities as any real estate, so far as trespasses or other torts upon it are concerned. It is for the convenience of commerce, it is true, but in the same sense any other improvement of the shore for the same purpose would be. In the case of Russel v. The Asa R. Swift [Case No. 12,144], the same learned judge says: "He" (the owner of a wharf) "is only a lessor for the time being of a part of his real estate, to be used as a moorage." No language can be plainer, and, I think, no conclusion sounder. The case of Philadelphia, W. & B. R. Co. v. Philadelphia & H. G. Tow-Boat Co., 23 How. [64 U. S.] 209, was a libel in personam by the tow-boat company for an obstruction to navigation on navigable waters, an injury having resulted therefrom to one of the boats of the company. The obstruction was was no part of a bridge, wharf, or any structure whatever. The spile had been driven there for engineering purposes in building a bridge. When work on the bridge ceased, its uses and purposes were at an end, and it was cut off below the surface of the water, and the stub was left standing, and became a simple obstruction to navigation, and nothing more nor less, the same to all intents and purposes as any obstruction to navigation without authority, right or legal purpose whatever. Id. 216. There the injury was done to the vessel on navigable waters. Here it was done to a fixed and permanent structure, real estate, and to all intents and purposes on the land, as held by the supreme court in the case of The Plymouth, cited supra. If the action in this case was against the wharf owners for an obstruction to navigation caused by their structure, and an injury resulting therefrom to a vessel, upon the water, it would be more nearly analogous to the case last cited from 23 How. But even then the two cases would not be alike, because in the one case the obstruction was no part of any structure whatever, for the purposes of commerce or otherwise, while in the other it is an improvement of the shore by extending it out over the water to aid and facilitate commerce.

Upon a careful consideration of the question, and of the authorities bearing upon it, I must hold that a wharf is but an improvement or extension of the shore; that it is real estate, and that an injury done to it, whether through negligence or design, no matter by what agency, is an injury done wholly on land and not on the water, and, therefore, does not constitute a marine tort. It necessarily follows that the remedy for such injury cannot be sought in the admiralty, but must be found in the courts of common law.

Libel dismissed.

See The Neil Cochran [Case No. 10,087].